UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
CIT BANK, N.A.,

                Plaintiff,

   -against-

MERLINE MITCHELL, EVONAE DICKERSON, and
CITY OF NEW YORK TRANSIT ADJUDICATION
BUREAU,

                Defendants.
----------------------------------------------------------------x

MEMORANDUM &
ORDER
17-CV-1969 (ILG) (SMG)

GLASSER, Senior United States District Judge:

    Plaintiff CIT Bank, N.A. ("CIT Bank"), f/k/a OneWest Bank, N.A. f/k/a OneWest Bank, FSB,[1] brings this diversity action against defendants Merline Mitchell ("Mitchell"), Evonae Dickerson ("Dickerson"), and City of New York Transit Adjudication Bureau ("TAB") to foreclose a mortgage encumbering real property located at 532 East 82nd Street, Brooklyn, New York. Am. Compl. ¶ 1, Dkt. 14. CIT Bank alleges that Mitchell is the owner of the property, Dickerson is a tenant, and TAB holds a lien subordinate to CIT Bank's mortgage. *Id.* ¶¶ 4–6.

    Upon CIT Bank's application and in light of defendants' failure to appear in or otherwise defend this action, the Clerk of the Court noted defendants' default on October 18, 2017. CIT Bank now moves for a default judgment against all defendants. Dkt. 24. For the reasons set forth below, the motion is **GRANTED**.

## BACKGROUND

    On June 10, 2006, Mitchell executed and delivered to Berkshire Financial Group, Inc. ("Berkshire") a promissory note, in which she promised to repay $517,000 with interest in

---

[1] As set forth in CIT Bank's affidavit, CIT Group Inc. acquired IMB Holdco LLC, the parent company of OneWest Bank, N.A., in August 2015. Ray Aff. ¶ 16, Dkt. 24-19.

connection with her purchase of the property.  Am. Compl. ¶ 13; *see* Note dated June 10, 2006, Dkt. 24-20.  On the same day, Mitchell executed, acknowledged, and delivered a mortgage on the property to Berkshire.  Am. Compl. ¶ 14; *see* Mortgage dated June 10, 2006, Dkt. 24-21.  On July 12, 2006, the mortgage was recorded in the Office of the City Register of the City of New York.  Am. Compl. ¶ 14; *see* Recording and Endorsement Cover Page, Dkt. 24-21.  An undated allonge affixed to the note transferred the note to IndyMac Bank, F.S.B. ("IndyMac").  Allonge, Dkt. 24-20.[2]  One year later, on July 12, 2007, Berkshire assigned the mortgage to Mortgage Electronic Registration Systems, Inc. ("MERS"), acting solely as nominee for IndyMac, and on August 13, 2007, the assignment was recorded.  Am. Compl. ¶ 15; *see* Assignment dated July 12, 2007, Dkt. 24-22.[3]

On July 24, 2007, Mitchell executed and delivered to IndyMac a second note in the amount of $25,123.77 with interest.  Am. Compl. ¶ 16; *see* Note dated July 24, 2007, Dkt. 24-22.  On the same day, Mitchell executed, acknowledged, and delivered a mortgage to MERS, acting solely as nominee for IndyMac, to secure the second note.  Am. Compl. ¶ 17; *see* Mortgage dated July 24, 2007, Dkt. 24-24.  This second mortgage was recorded on August 13, 2007.  Am. Compl. ¶ 17; *see* Recording and Endorsement Cover Page, Dkt. 24-24.  Mitchell then executed and delivered to IndyMac a consolidated note (hereinafter, "the Note"), in which both notes were amended and restated in their entirety and consolidated to evidence a single loan in the amount of $540,000 with interest.  Am. Compl. ¶ 18; *see* Note, Dkt. 24-25.  By a Consolidation, Extension and Modification

---

[2]  An allonge is "[a] slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements."  Black's Law Dictionary (10th ed. 2014).

[3]  MERS is "a computerized system that tracks ownership of interests in residential mortgages."  *CIT Bank, N.A. v. Metcalfe*, No. 15-CV-1829 (MKB)(JO), 2017 WL 3841843, at *2 n.1 (E.D.N.Y. Aug. 17, 2017).  MERS never owned the note secured by the mortgage, so "its status as [IndyMac]'s nominee is of no moment to any issue before this [C]ourt."  *Id.*

Agreement ("CEMA"), both mortgages were also consolidated to form a single lien (hereinafter, "the Mortgage"). Am. Compl. ¶ 19; *see* CEMA & Mortgage, Dkt. 24-25. The CEMA was recorded on August 13, 2007. Am. Compl. ¶ 19; *see* Recording and Endorsement Cover Page, Dkt. 24-25.

Pursuant to a modification agreement dated October 22, 2007, the Note and Mortgage were modified to provide for (1) a new principal balance of $514,876.23, (2) a fixed annual interest rate of 7.5%, (3) a new maturity date of October 1, 2037, and (4) a balloon payment payable in full at maturity. Am. Compl. ¶ 20; *see* Modification Agreement dated Oct. 22, 2007, Dkt. 24-26. This modification agreement was recorded on May 21, 2008. Am. Compl. ¶ 20; *see* Recording and Endorsement Cover Page, Dkt. 24-26. An undated allonge affixed to the Note transferred that Note to OneWest Bank, FSB. Allonge, Dkt. 24-23.

Pursuant to a modification agreement dated July 19, 2010, the Note and Mortgage were again modified to provide for (1) a new principal balance of $565,260.36, (2) interest deferment on $194,327.44 of the new principal balance, (3) an interest rate that starts at 2% and increases with time, and (4) a new maturity date of August 1, 2050. Am. Compl. ¶ 22; *see* Modification Agreement dated July 19, 2010, Dkt. 24-27. This second modification agreement was recorded on November 29, 2011. Am. Compl. ¶ 22; *see* Recording and Endorsement Cover Page, Dkt. 24-27.

On March 10, 2016, MERS, as nominee for IndyMac, assigned the Mortgage to CIT Bank. Am. Compl. ¶ 23; *see* Assignment dated Mar. 10, 2016, Dkt. 24-28. This assignment was recorded on March 24, 2016. Am. Compl. ¶ 23; *see* Recording and Endorsement Cover Page, Dkt. 24-28.

Mitchell defaulted under the terms of the Note and Mortgage by failing to tender the monthly payment that was due on July 1, 2015, and failing to tender any subsequent monthly

3

payments. Am. Compl. ¶ 30. On November 29, 2016, CIT Bank sent Mitchell a notice of default via certified mail pursuant to the terms of the Note and Mortgage. *Id.* ¶ 31; *see* Not. of Default, Dkt. 24-29. On November 30, 2016, CIT Bank mailed Mitchell a 90-day pre-foreclosure notice in accordance with applicable New York law. Am. Compl. ¶ 32; *see* 90-day Pre-Foreclosure Not., Dkt. 24-30. On December 1, 2016, CIT Bank filed the 90-day pre-foreclosure notice with the New York State Department of Financial Services. Am. Compl. ¶ 33; Proof of Filing Statement, Dkt. 24-31. Mitchell has not cured her default. Am. Compl. ¶ 35.

The Note and Mortgage expressly permit the holder of the Note, upon a default by Mitchell, to require immediate payment of the entire amount due, which includes both the full unpaid principal and any interest owed on that amount. Note § 7(C); Mortgage § 22. CIT Bank invoked this right when it filed its complaint on April 5, 2017. Compl. ¶ 35, Dkt. 1. A notice of pendency was filed in the Kings County Clerk's Office on April 12, 2017. Not. of Pendency, Dkt. 24-12.

CIT Bank seeks a judgment of foreclosure and sale, attorneys' fees and costs, and the appointment of a referee to conduct the sale of the foreclosed premises under conditions set out in the proposed judgment of foreclosure and sale. Proposed Judgment, Dkt. 24-18.

## DISCUSSION

### I. Standing

Because CIT Bank was not an original party to the Note or Mortgage, the Court must first establish that it has standing to bring this foreclosure action.[4] Under New York law, "[a] plaintiff establishes its standing in a mortgage foreclosure action by demonstrating that, when the action was commenced, it was either the holder or assignee of the underlying note." *OneWest Bank, N.A.*

---

[4] "Because the standing issue goes to this Court's subject matter jurisdiction, it can be raised *sua sponte*." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005).

4

*v. Melina*, 827 F.3d 214, 222 (2d Cir. 2016) (quoting *Wells Fargo Bank, N.A. v. Rooney*, 132 A.D.3d 980, 981 (2d Dep't 2015)). "Either a written assignment of the underlying note or the physical delivery of the note prior to commencement of the foreclosure action is sufficient to transfer the obligation, and the mortgage passes with the debt as an inseparable incident." *Id.* (quoting *U.S. Bank, N.A. v. Collymore*, 68 A.D.3d 752, 754 (2d Dep't 2009)). "A mortgage note is a negotiable instrument which may be transferred via an endorsement on the instrument itself or on an allonge." *CIT Bank, N.A. v. Metcalfe*, No. 15-CV-1829 (MKB)(JO), 2017 WL 3841843, at *2 (E.D.N.Y. Aug. 17, 2017), *report and recommendation adopted*, 2017 WL 3841852 (E.D.N.Y. Sept. 1, 2017). An allonge need not be dated in order to effectuate a transfer of the note. *Bank of Am., N.A. v. 3301 Atl., LLC*, No. 10-CV-5204 (FB), 2012 WL 2529196, at *8 (E.D.N.Y. June 29, 2012) ("Dating . . . appear[s] to be irrelevant to the status of an allonge.").

      Here, CIT Bank has provided a copy of an undated allonge attached to the Note that was endorsed by FDIC, as IndyMac's receiver, in favor of CIT Bank's predecessor, OneWest Bank, FSB. Allonge at ECF Pg. 11, Dkt. 24-23.[5] CIT Bank has also provided a copy of the assignment of the Mortgage by MERS, as nominee for IndyMac, to CIT Bank. Assignment dated Mar. 10, 2016, Dkt. 24-28. Because CIT Bank attached these documents, along with the other notes, mortgages, assignments, and modification agreements, to the Certificate of Merit, which was filed the same day as the original complaint on April 5, 2017, and attached the same documents to the Amended Certificate of Merit, which was filed the same day as the amended complaint on June 29, 2017, it has adequately demonstrated that the allonge and the Mortgage assignment were in existence upon commencement of this suit. *See* Cert. of Merit & Exhibits., Dkt. 3, 3-1, 3-2, 3-3;

---

[5] CIT Bank has also provided a second undated allonge attached to the Note that is identical to the first allonge, except that the section underneath the line "WITHOUT RECOURSE, PAY TO THE ORDER OF" has been left blank and the title of Sandra Schneider has been changed from "Attorney-In-Fact" to "Vice President, OneWest Bank, FSB." Second Allonge at ECF Pg. 12, Dkt. 24-23.

Amended Cert. of Merit & Exhibits, Dkt. 15, 15-1, 15-2, 15-3. Therefore, CIT Bank was the holder of the Note at the commencement of this action and has standing to foreclose on the property. *See CIT Bank, N.A. v. Nwanganga*, 328 F. Supp. 3d 189, 196–97 (S.D.N.Y. 2018) ("Plaintiff attached a copy of the indorsed Note to the Certificate of Merit filed with the Complaint . . . . Therefore, Plaintiff was the holder of the Note at the time this Action commenced and has standing to foreclose on the Property"); *U.S. Bank Nat. Ass'n v. Saravanan*, 146 A.D.3d 1010, 1011 (2d Dep't 2017) ("[T]he plaintiff established its standing as the holder of the note by demonstrating that the note was in its possession prior to the commencement of the action, as evidenced by its attachment of the endorsed note to the summons and complaint at the time the action was commenced."); *see also Wells Fargo Bank, N.A. v. Landi*, No. 13-CV-5822 (RRM)(JO), 2015 WL 5655810, at *3 (E.D.N.Y. Aug. 14, 2015) ("Because . . . Wells Fargo attached the Note and allonge to the Complaint, it has adequately demonstrated that the allonge was in existence upon commencement of this suit"), *report and recommendation adopted*, 2015 WL 5657358 (E.D.N.Y. Sept. 22, 2015).

## II. Liability

### a. Legal Standard

As defaulting parties, defendants are deemed to have conceded all well-pleaded allegations of liability. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). Nonetheless, a default judgment is only warranted if "the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *Labarbera v. ASTC Labs. Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (internal quotation marks and citation omitted).

### b. Default Judgment against Mitchell

"Under New York law, a plaintiff seeking to foreclose upon a mortgage must demonstrate the existence of the mortgage and mortgage note, ownership of the mortgage, and the defendant's default in payment on the loan secured by the mortgage." *Windward Bora LLC v. Baez*, No. 19-CV-5698 (PKC)(SMG), 2020 WL 4261130, at *3 (E.D.N.Y. July 24, 2020) (internal quotation marks and citation omitted); *see Nationstar Mortg. LLC v. Garcia*, No. 15-CV-1854 (ADS)(SIL), 2015 WL 13745693, at *3 (E.D.N.Y. Oct. 19, 2015), *report and recommendation adopted*, 2016 WL 899268 (E.D.N.Y. Mar. 9, 2016). "[O]nce a plaintiff mortgagee in a foreclosure action has established a prima facie case by presenting a note, a mortgage, and proof of default, it has a presumptive right to foreclose that can only be overcome by an affirmative showing by the mortgagor." *CIT Bank, N.A. v. Castillo*, No. 17-CV-2132 (DRH)(ARL), 2018 WL 1660738, at *2 (E.D.N.Y. Mar. 8, 2018) (internal quotation marks and citation omitted), *report and recommendation adopted*, 2018 WL 1640591 (E.D.N.Y. Apr. 5, 2018); *see CIT Bank, N.A. v. Seeram*, No. 16-CV-2608 (RRM)(LB), 2017 WL 8220204, at *3 (E.D.N.Y. Feb. 15, 2017), *report and recommendation adopted*, 2018 WL 1308003 (E.D.N.Y. Mar. 13, 2018).

Here, CIT Bank has established the existence of the Note and Mortgage and its ownership of the Mortgage by producing copies of the Note and Mortgage, as well as the modification agreements, the allonges, and the series of assignments. CIT Bank has also shown Mitchell's default by submitting copies of the notice of default, the 90-day pre-foreclosure notice, an affidavit by Michelle Nicole Ray, CIT Bank's Assistant Secretary, and an affirmation by Marc J. Gross, CIT Bank's former attorney,[6] attesting to Mitchell's default. *See* Ray Aff., Dkt. 24-19; Gross

---

[6] Erina Fitzgerald, Esq. of Knuckles, Komosinski & Manfro, LLP is the current attorney of record for CIT Bank. Consent Order dated Jan. 13, 2020, Dkt. 27.

7

Affirm., Dkt. 24. The allegations in the amended complaint further establish CIT Bank's prima face entitlement to a default judgment. Am. Compl. ¶¶ 13–35. Mitchell has not appeared in this action and thus has not made an affirmative showing to overcome CIT Bank's prima facie case. *See* CIT Bank's Mem. of Law at 5–6, Dkt. 24-36. Therefore, this Court grants CIT Bank's motion for default judgment against Mitchell. *See OneWest Bank, N.A. v. Hawkins*, No. 14-CV-4656 (NGG), 2015 WL 5706945, at *5–*6 (E.D.N.Y. Sept. 2, 2015), *report and recommendation adopted*, 2015 WL 5706953 (E.D.N.Y. Sept. 28, 2015).

      c. Default Judgment against Dickerson

"Courts regularly enter default judgments in foreclosure actions against defendants with 'nominal interests' in the relevant property, including . . . non-owner tenants." *E. Sav. Bank, FSB v. Robinson*, No. 13-CV-7308 (ADS)(SIL), 2016 WL 3365091, at *4 (E.D.N.Y. May 9, 2016), *report and recommendation adopted*, 2016 WL 3102021 (E.D.N.Y. June 2, 2016); *see 1st Bridge LLC v. 682 Jamaica Ave., LLC*, No. 08-CV-3401 (NGG)(MDG), 2010 WL 4608326, at *2 (E.D.N.Y. July 13, 2010), *report and recommendation adopted*, 2010 WL 4607409 (E.D.N.Y. Nov. 4, 2010); *see also* Real Prop. Acts. Law ("RPAPL") § 1311(1) (necessary parties to a mortgage foreclosure include "[e]very person having an estate or interest in possession, or otherwise, in the property as tenant in fee, for life, by the curtesy, or for years"). "When a default judgment is entered against a defendant with a 'nominal interest' in a property, any such interest in the relevant property is terminated." *Robinson*, 2016 WL 3365091, at *4.

Here, CIT Bank alleges in the amended complaint that Dickerson, as a tenant, "ha[s], claims to have, or may claim to have some interest in or lien upon the Mortgaged Property or some part thereof, and any such lien or interest is subject and subordinate to, the lien of the Mortgage." Am. Compl. ¶ 7. Despite CIT Bank's proper service of the summons and amended complaint on

8

Dickerson, *see* Aff. of Service dated Aug. 24, 2017, Dkt. 21, Dickerson never filed an answer or otherwise appeared in the action, which ultimately resulted in the Clerk of the Court's entry of default against her.  As such, CIT Bank's allegation that Dickerson's interest in the property is subordinate to the Mortgage is deemed conceded, thus establishing Dickerson's nominal liability. *See OneWest Bank, N.A. v. Denham*, No. 14-CV-5529 (DRH)(AKT), 2015 WL 5562980, at *8 (E.D.N.Y. Aug. 31, 2015), *report and recommendation adopted*, 2015 WL 5562981 (E.D.N.Y. Sept. 21, 2015).  Therefore, this Court grants CIT Bank's motion for default judgment against Dickerson.

        d.   <u>Default Judgment against TAB</u>

Necessary parties to a mortgage foreclosure under New York law also include "person[s] having any lien or incumbrance upon the real property which is claimed to be subject and subordinate to the lien of the plaintiff." RPAPL § 1311(3). "The joinder of junior lienholders in a foreclosure action operates to extinguish the rights of redemption of all those who have a subordinate interest in the property and to vest complete title in the purchaser at the judicial sale." *Metcalfe*, 2017 WL 3841843, at *6 (internal quotation marks and citation omitted). "Where a city or any department, bureau, board, commission, officer, agency or instrumentality thereof is a defendant in an action affecting real property," the plaintiff must include in the complaint "[d]etailed facts showing the particular nature of the interest in or lien on the real property and the reason for making such city a party-defendant." RPAPL § 202-a(1).

Here, CIT Bank alleges in the amended complaint that TAB "has an interest in the Property as a subordinate lienor" and attaches a copy of a title search reflecting any and all judgments that TAB holds against Mitchell. Am. Compl. ¶ 6; *see* Schedule B, Dkt. 14.  These allegations establish TAB's nominal liability and also satisfy the RPAPL's heightened pleading requirements for TAB

9

as a city defendant. *See CIT Bank v. Dambra*, No. 14-CV-3951 (SLT)(VMS), 2015 WL 7422348, at *6 (E.D.N.Y. Sept. 25, 2015) (nominal liability was well-pleaded where plaintiff submitted title searches reflecting monies owed to the New York Environmental Control Board and the New York City Parking Violations Bureau), *report and recommendation adopted*, 2015 WL 7430006 (E.D.N.Y. Nov. 20, 2015). Accordingly, the Court grants CIT Bank's motion for default judgment against TAB.

### III. Damages

#### a. Legal Standard

Upon a finding of liability, the Court still needs to "conduct an inquiry sufficient to establish damages to a 'reasonable certainty.'" *E. Sav. Bank, FSB v. Rabito*, No. 11-CV-2501 (KAM), 2012 WL 3544755, at *7 (E.D.N.Y. Aug. 16, 2012) (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)). In conducting this inquiry, "the court may rely on detailed affidavits or documentary evidence . . . to evaluate the proposed sum." *Id.* (quoting *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)). With this standard in mind, the Court considers the various categories of damages requested by CIT Bank.

#### b. Amount Due on the Note and Associated Fees and Costs

By the terms of the Note, Mortgage, and the Modification Agreement dated July 19, 2010, CIT Bank seeks $533,876.69 in principal owed on the Note, as well as interest accrued as of December 1, 2017, in the amount of $30,134.96. *See* Note § 7(C); Mortgage § 22; Modification Agreement dated July 19, 2010 (providing that interest would accrue at a rate of 2% from August 1, 2010 through July 31, 2015, 3% from August 1, 2015 through July 31, 2016, 4% from August

1, 2016 through July 31, 2017, and 4.625% from August 1, 2017 through August 1, 2050); Payoff Calculations, Dkt. 24-32; *see also* Ray Aff. ¶ 36.[7]

CIT Bank also seeks to recover, under the Note and Mortgage, (1) costs associated with the loan, including property inspection fees and BPO/appraisal fees, in the amount of $426.53; (2) advances made by CIT Bank to cover escrow shortages in the amount of $23,469.26; and (3) late pre-acceleration late fees from July 16, 2015, through November 29, 2016, in the amount of $447.96. *See* Note § 7; Mortgage §§ 3, 9; Corporate Advance History, Dkt. 24-33; Escrow Advance Breakdown, Dkt. 24-34; Fee Activity Ledger, Dkt. 24-35; *see also* Ray Aff. ¶ 36.[8] Defendants have not objected to CIT Bank's calculations despite being served with a copy of the motion papers. Aff. of Service, Dkt. 24-37. After a careful review of the record, which includes not only Ms. Ray's affidavit but also underlying documentation detailing CIT Bank's calculations, the Court finds that an evidentiary hearing is not necessary and enters a judgment, as of December 1, 2017, in CIT Bank's favor in the amount totaling $588,355.40.

   c. Attorneys' Fees

By the terms of the Note and Mortgage, CIT Bank is entitled to its reasonable attorneys' fees incurred in prosecuting this action. Note § 7(E); Mortgage § 22. CIT Bank seeks a fee award

---

[7] Assistant Secretary Ray's affidavit, apparently inaccurately, calculates the amount of interest accrued as of December 1, 2017, to be $23,469.26. Ray Aff. ¶¶ 27, 36. In making this calculation, Ms. Ray sets forth different interest rates than those set forth in the modification agreement dated July 19, 2010. *Id.* ¶ 27. However, the Payoff Calculations Sheet, attached as Exhibit M to Ms. Ray's affidavit, calculates the interest accrued as of December 1, 2017, to be $30,134.96, by using the interest rates provided in the July 19 modification agreement. The Court determines that the amount set forth in the Payoff Calculations Sheet is accurate.

[8] Assistant Secretary Ray's affidavit, apparently inaccurately, calculates the BPO/appraisal fees accrued as of December 1, 2017, to be $750.00. Ray Aff. ¶¶ 29, 36. However, the Corporate Advance History, attached as Exhibit N to Ms. Ray's affidavit, calculates BPO/appraisal fees accrued as of November 8, 2017, to be $350.00. The Court determines that the amount of BPO/appraisal fees set forth in the Corporate Advance History is accurate. Therefore, the total amount of recoverable costs should be $426.53, which includes $99.00 in inspection fees, $350.00 in BPO/appraisal fees, and a credit of $22.47.

of $14,608.50 comprising of: (i) $9,658.50 in fees for services billed at hourly rates; (ii) a $2,800 flat fee, and (iii) $2,150 in anticipated fees. Gross Affirm. ¶¶ 41, 53. CIT Bank also seeks legal costs totaling $1,700.37. *Id.* ¶ 59. In support of the fee application, CIT Bank's former counsel, Windels Marx Lane & Mittendorf, LLP, has submitted Mr. Gross's affirmation and contemporaneous time records indicating that counsel expended a total of 59 hours for legal services rendered. Gross Affirm. ¶ 43; *see* Legal Invoices, Dkt. 24-17.

      i.    *Services Billed at Hourly Rates*

In the Second Circuit, courts determine the amount of attorneys' fees to award a prevailing party "by calculating the 'presumptively reasonable fee.'" *Seeram*, 2017 WL 8220204, at *5 (quoting *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 172 (2d Cir. 2009)). To determine the "presumptively reasonable fee," a court "multipl[ies] the number of hours spent on the litigation by 'a reasonable hourly rate.'" *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).[9] In addition, courts should take into account case-specific variables such as

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 186 n.3 (2d Cir. 2008) (citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir.

---

[9] This formula for calculating the presumptively reasonable fee is known as "the lodestar method." *See Restivo v. Hessemann*, 846 F.3d 547, 589 (2d Cir. 2017).

1974)). "The burden is on the party moving for attorney's fees to justify the hourly rate sought." *Seeram*, 2017 WL 8220204, at *5 (internal quotation marks and citation omitted).

The traditional rule in the Second Circuit is that a fee application must be supported by "contemporaneous time records" that "specify, for each attorney, the date, the hours expended, and the nature of the work done." *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). "Failure to do so results in denial of the motion for fees." *Riordan v. Nationwide Mut. Fire Ins. Co.*, 977 F.2d 47, 53 (2d Cir. 1992); *see also Scott v. City of New York*, 626 F.3d 130, 133–34 (2d Cir. 2010). District courts have broad discretion in determining the reasonableness of an attorney's requested fees. *See Firststorm Partners 2, LLC v. Vassel*, No. 10-CV-2356 (KAM)(RER), 2012 WL 3536979, at *2 (E.D.N.Y. Aug. 15, 2012).

A reasonable hourly rate is "the rate a paying client would be willing to pay." *Arbor Hill*, 522 F.3d at 190. Whether a given attorney's hourly rate is reasonable depends on "the prevailing hourly rate in the community," and "the relevant 'community' is the district where the district court sits." *Ehrlich v. Royal Oak Fin. Servs., Inc.*, No. 12-CV-3551 (BMC), 2012 WL 5438942, at *3 (E.D.N.Y. Nov. 7, 2012) (citing *Polk v. N.Y. State Dep't of Corr. Servs., Inc.*, 722 F.2d 23 (2d Cir. 1983)). "Hourly rates in the Eastern District of New York generally range from $300.00 to $450.00 for partners, $200.00 to $325.00 for senior associates, $100.00 to $200.00 for junior associates and $85.00 to $100.00 for paralegals." *CIT Bank N.A. v. Gordon*, No. 17-CV-3972 (ADS)(SIL), 2020 WL 4587446, at *3 (E.D.N.Y. May 10, 2020), *report and recommendation adopted*, 2020 WL 2711420 (E.D.N.Y. May 26, 2020); *see CIT Bank, N.A. v. Elliot*, No. 15-CV-4395 (JS)(ARL), 2019 WL 5694332, at *3 (E.D.N.Y. July 25, 2019*), report and recommendation adopted*, 2019 WL 4439347 (E.D.N.Y. Sept. 17, 2019). "In cases involving mortgage foreclosures, however, courts have found 'lower than standard rates to be acceptable.'" *Gordon*,

2020 WL 4587446, at *3 (quoting *CIT Bank, N.A. v. Hawkins*, No. 14-CV-4656 (NGG), 2017 WL 8786867, at *4 (E.D.N.Y. Sept. 14, 2017)).

Here, Mr. Gross's affirmation and the contemporaneous time records indicate that counsel billed for services rendered by (1) Andrew L. Jacobson, Esq., special counsel who was admitted to practice in 1992, at rates of $360 and $475 per hour; (2) Rachel B. Drucker, an associate who was admitted to practice in 2011, at rates of $220, $295, and $390 per hour; and (3) Marc J. Gross, Esq., an associate who was admitted to practice law in 2013, at a rate of $330 per hour. Gross Affirm. ¶¶ 46–48. Although CIT Bank indicates that each attorney has extensive experience litigating mortgage foreclosure cases, CIT Bank has not offered any information about the difficulty of this particular case or the hourly rates approved in similar cases.

Based on a review of the docket and the descriptions of the type of services rendered, this case does not appear to be complex or require a high level of skill warranting heightened hourly fees. Moreover, courts in the Eastern District have recently reduced the hourly rates in similar cases involving the same attorneys. *See*, *e.g.*, *Gordon*, 2020 WL 4587446, at *3. Accordingly, the Court reduces the hourly rates as follows:

| Name | Title | Hourly Rate(s) Requested | Adjusted Hourly Rate |
|---|---|---|---|
| Jacobson | Special Counsel | $360, $475 | $375 |
| Drucker | Senior Associate | $220, $295, $390 | $250 |
| Gross | Senior/Mid-level Associate | $330 | $225 |

The next step in awarding attorneys' fees is determining the reasonableness of the number of hours expended by counsel. The Court will not compensate counsel for hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. Each entry in counsel's time records should be examined "with a view to the value of the work product of the specific expenditures to the client's case." *Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir.

14

1997).  If the court finds "that some of the time was not reasonably necessary . . . it should reduce the time for which compensation is awarded accordingly." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 111 (2d Cir. 2012).

Here, the contemporaneous time records show a total of 33.9 hours billed.  Gross Affirm. ¶ 41; *see* Legal Invoices.  Specifically, Mr. Jacobson billed 3.9 hours, Ms. Drucker billed 24.3 hours, and Mr. Gross billed 5.7 hours.  Gross Affirm. ¶¶ 46–48.  This includes time spent: (1) obtaining, reviewing, and analyzing the title search of the property; (2) reviewing the loan documents; (3) preparing a Section 255-Affidavit regarding the modification agreement; (4) drafting the Certificate of Merit and supporting documents; (5) preparing, reviewing, and filing the summons and complaint and the corporate disclosure statement; (6) drafting and filing the Notice of Pendency; (7) preparing for and arranging service of the summons and complaint on defendants; (8) preparing, reviewing, and filing the summons and amended complaint; (9) preparing for and arranging service of the summons and amended complaint on defendants; and (10) preparing and filing the request for a Certificate of Default and the motion for default judgment against defendants.  *Id.* ¶ 39.

The contemporaneous time records are heavily redacted, making it difficult to ascertain the descriptions in each entry.  Nevertheless, based on this Court's review, it does not appear that any expenditure of time is unnecessary or duplicative.  Accordingly, the Court finds 33.9 hours to be reasonable and further finds the hours expended by each individual attorney to be reasonable.  The Court calculates the presumptively reasonable fee for each attorney as follows:

| Name | Adjusted Hourly Rate | Hours Expended | Lodestar |
| --- | --- | --- | --- |
| Jacobson | $375 | 3.9 | $1,462.50 |
| Drucker | $250 | 24.3 | $6,075.00 |
| Gross | $225 | 5.7 | $1,282.50 |
| **TOTAL SUM** | | | **$8,820.00** |

15

Therefore, the Court awards $8,820 to CIT Bank for legal services rendered at hourly rates.

  *ii.*   *Services Billed at a Flat Fee Rate*

Where, as here, the prevailing party's counsel charged a flat fee, courts generally will not award the flat fee "unless the supporting documentation is detailed enough to satisfy the Second Circuit's requirement that 'attorneys' fees must be based on contemporaneous time records specifying relevant dates, time spent and work done.'" *Incredible Foods Grp., LLC v. Unifoods, S.A. De C.V.*, No. 14-CV-5207 (KAM)(JO), 2016 WL 4179943, at *6 (E.D.N.Y. Aug. 5, 2016) (quoting *OneWest Bank, N.A. v. Cole*, No. 14-CV-3078 (FB)(RER), 2015 WL 4429014, at *6 (E.D.N.Y. July 17, 2015)). "Even where there is a flat rate agreement, the Court must still examine whether the fee is reasonable, and it does so by calculating the presumptively reasonable fee via the lodestar method and comparing it to the flat fee amount." *Cole*, 2015 WL 4429014, at *6. Absent adequate records of the legal work performed, "the court may deny fees altogether or reduce the award." *Incredible Foods*, 2016 WL 4179943, at *6 (quoting *In re City of New York*, No. 03-CV-6049 (ERK)(VVP), 2011 WL 7145228, at *11 (E.D.N.Y. Dec. 2, 2011)). Courts in this District have done both in cases similar to this one, including other cases involving this plaintiff. *See Seeram*, 2017 WL 8220204, at *6 (collecting cases).

Here, CIT Bank seeks $2,800 for 25.20 hours of work billed at a flat rate. Gross Affirm. ¶ 41. Mr. Gross's affirmation does not describe the type of work that was billed at the flat fee rate, and the invoices do not differentiate between the flat rate and the hourly rate, thus making it appear as if all the hours were billed at hourly rates. The affirmation provides only the number of hours that each attorney and staff member billed at the flat fee rate, as follows: (1) 5.2 hours by Mr. Gross; (2) 2.4 hours by Mr. Jacobson; (3) 12.60 hours by Ms. Drucker; (4) .10 hours by Michael H. Resnikoff, Esq., special counsel who was admitted to practice in 1991; (5) .2 hours by Caitlin

16

A. Cleary, a former law clerk; (6) .8 hours by Julius Crockwell, the chief paralegal; and (7) .8 hours by Giselle Mencio, a senior paralegal. *Id.* ¶¶ 46–52.[10]

In light of CIT Bank's failure to submit adequate records to establish the reasonableness of its flat fee rate of $2,800, the Court denies CIT Bank's request for an award of $2,800 for its flat rate. *See Gordon*, 2020 WL 4587446, at *6; *CIT Bank, N.A. v. Elliot*, No. 15-CV-4395 (JS)(ARL), 2019 WL 2436212, at *8 (E.D.N.Y. Feb. 5, 2019) (recommending denial of motion for attorneys' fees where plaintiff submitted invoices that did not identify "which individuals billed hours that were attributable to the flat fee services and which individuals billed fees for services billed at hourly rates[ ]").

    *iii.  Anticipated Fees*

CIT Bank seeks to recover $2,150 in legal fees that it expects to incur "after this motion is decided, and judgment of foreclosure and sale is entered." Gross Affirm. ¶ 44. "Courts in this District, however, typically do not award fees before they are incurred." *CIT Bank, N.A. v. Ayers*, No. 15-CV-7256 (JFB)(SIL), 2017 WL 6816486, at *5 (E.D.N.Y. Dec. 5, 2017) (collecting cases), *report and recommendation adopted*, 2018 WL 317840 (E.D.N.Y. Jan. 3, 2018). Accordingly, the Court denies CIT Bank's request for anticipated fees without prejudice and with leave to renew upon the submission of the appropriate supporting documentation after such fees are actually incurred.

    *iv.  Costs*

A party awarded attorney's fees is also entitled to compensation for "those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-*

---

[10] According to the affirmation, the number of hours that each attorney and staff member billed at the flat fee rate amounts to only 22.1 hours, not 25.20 hours.

17

*Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998) (internal quotation marks and citation omitted). CIT Bank seeks to recover costs of $400 for the filing fee, $1,025 for service of process, $192 for filing fees, $19.05 for copy fees, $37.98 for overnight delivery and postage, and $26.34 for legal research fees, for a total amount of $1,700.37. Gross Affirm. ¶ 59; *see* Legal Invoices. Although Mr. Gross's affirmation calculates the overnight delivery and postage to be $37.98, this Court's review of the legal invoices reveals that the overnight delivery and postage costs—apparently also known as "air courier/messenger" costs—amount to $35.22, not $37.98. Moreover, no legal research fees are listed on the legal invoices. CIT Bank's other calculations appear to be correct. Therefore, this Court calculates the overnight delivery and postage costs to be $35.22 based on the legal invoices, and does not include legal research fees in its overall calculation. CIT Bank is awarded $1,671.27 in costs.

### IV. Appointment of a Referee

CIT Bank requests the Court to appoint a referee to sell the subject property, but does not request that any specific person be appointed. CIT Bank's Mem. of Law at 9; *see* Proposed Judgment at 3. "Courts in this Circuit have permitted such appointments where the plaintiff established a *prima facie* case by presenting a note, a mortgage, and proof of default." *Dambra*, 2015 WL 7422348, at *7 (internal quotation marks and citation omitted). Accordingly, CIT Bank is directed to propose the names of three referees to the Court, along with a brief description of their qualifications. *See Windward Bora, LLC v. Thompson*, No. 18-CV-1811 (NGG)(RML), 2020 WL 1242828, at *6 (E.D.N.Y. Mar. 16, 2020).

## CONCLUSION

For the foregoing reasons, CIT Bank's motion for a default judgment is **GRANTED**. CIT Bank is directed to submit the names of three (3) proposed referees and a revised proposed

judgment of foreclosure and sale within thirty (30) days of the date of this Memorandum and Order. The Court will enter a judgment of foreclosure and sale following its selection of a referee.

SO ORDERED.

_____/s/_____
I. Leo Glasser, U.S.D.J.

Brooklyn, New York
January 6, 2021